**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 19, 2006

HERALD COMPANY, INC, d/b/a
BOOTH NEWSPAPERS, INC and
ANN ARBOR NEWS,

      Plaintiff-Appellant,

v

No. 128263

EASTERN MICHIGAN UNIVERSITY
BOARD OF REGENTS,

      Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

The question presented in this case is whether the Washtenaw Circuit Court (the circuit court) properly withheld from disclosure a letter (Doyle letter) written by Eastern Michigan University's (EMU) Vice President of Finance Patrick Doyle to a member of defendant EMU Board of Regents, Jan Brandon. The circuit court held that the letter was exempt as a frank communication under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* The Doyle letter was written at Brandon's request as part of defendant's investigation of allegations that the then-

president of EMU, Samuel Kirkpatrick, had run the construction of a new president's house (University House project) precipitously over budget.

Applying the balancing test set forth in the statutory language of MCL 15.243(1)(m), the frank communication exemption, the circuit court concluded that the public interest in encouraging frank communication clearly outweighed the public interest in disclosure and, therefore, that the Doyle letter was exempt from disclosure. The Court of Appeals affirmed in a split decision, determining that the circuit court did not commit clear error. We granted leave to appeal.

We affirm the result reached by the Court of Appeals, but we take this opportunity to clarify the appropriate standard of review of discretionary determinations in FOIA cases. In *Federated Publications, Inc v City of Lansing,*[1] we held that appellate courts must review the trial court's discretionary determinations in FOIA cases for clear error. We continue to hold that the clear error standard of review is appropriate where the parties challenge the *factual findings* of the trial court. However, where the parties do not dispute the underlying facts but rather challenge the trial court's exercise of discretion, we hold that an appellate court must review that determination for an abuse of

---

[1] 467 Mich 98; 649 NW2d 383 (2002).

2

discretion, which this Court now defines as a determination that is outside the principled range of outcomes.[2]

In this case, the parties do not dispute the underlying facts. Rather, they dispute the import of those facts as they factor into the weighted balancing test of the frank communication exemption. Accordingly, we review the circuit court's decision to affirm the nondisclosure of the Doyle letter for an abuse of discretion. We hold that the circuit court reached a decision that was within the principled range of outcomes when it determined the balance of competing interests favored nondisclosure and that it therefore did not abuse its discretion.

We also hold that, pursuant to MCL 15.244, the public body must "to the extent practicable, facilitate a separation of exempt from nonexempt information" and "make the nonexempt material available for examination and copying." Accordingly, we remand this case to the circuit court to separate this material from the Doyle letter and make the nonexempt material available to plaintiff.

## I. Facts and Procedural History

Established by the Michigan Constitution, which confers upon it "general supervision of the institution and the control and direction of all expenditures from

---

[2] *City of Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005), quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) ("Discretion is abused when the decision results in 'an outcome falling outside this principled range of outcomes.'").

3

the institution's funds,"[3] defendant has broad constitutional and statutory[4] oversight to govern Eastern Michigan University. Pursuant to this constitutional mandate, defendant investigated the University House project controversy as it unfolded in 2003. The Doyle letter arose out of this internal investigation.

Plaintiff Herald Company, Inc., doing business as Booth Newspapers, Inc., and the Ann Arbor News, sent FOIA requests to defendant on September 10 and 11, 2003, as it conducted its own investigation, seeking numerous documents related to the University House project.[5] In an October 1, 2003, letter, defendant

---

[3] Const 1963, art 8, § 6.

[4] MCL 390.553.

[5] In the September 10, 2003, FOIA request, plaintiff sought two categories of correspondence:

   1. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, to and from the following parties since Jan. 1, 2002, regarding the new University House on campus:

   • Vice President for Business and Finance Patrick Doyle or other staff members of the Office of Business and Finance.
   • The EMU Board of Regents.
   • EMU President Samuel Kirkpatrick.

   2. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, between Vice President for Business and Finance Patrick Doyle to and from the EMU Board of Regents, EMU President Samuel Kirkpatrick and/or the Office of Human Resources, regarding Doyle's recent resignation and-or retirement.

(continued…)

4

granted plaintiff's FOIA requests except where defendant indicated either the documents sought did not exist or were in the possession of a separate corporate entity, the EMU Foundation. Defendant sent a second letter to plaintiff on October 7, 2003, that specifically identified the Doyle letter and advised plaintiff that it would not disclose the letter pursuant to the frank communication exemption of the FOIA.

On February 5, 2004, plaintiff filed simultaneously in the circuit court a complaint and an emergency motion to compel disclosure of the Doyle letter under the FOIA. After a hearing and viewing the letter in camera, the circuit court issued a written opinion and concluded that the Doyle letter met the statutory definition of a frank communication. In resolving the required statutory balancing test, the circuit court concluded that the balance favored nondisclosure. It permitted defendant to withhold the Doyle letter in its entirety.

In a split, published decision, the Court of Appeals affirmed the circuit court.[6] Chief Judge Whitbeck filed a dissent, arguing that the circuit court

_____

(…continued)

In the September 11, 2003, FOIA request, plaintiff sought all (1) budgets, (2) bank accounts, (3) invoices, (4) change orders, (5) bids, (6) funding sources, (7) board of regents resolutions, (8) and fees, salary, or other income paid to Pamela Kirkpatrick, wife of EMU President Samuel Kirkpatrick, related to the University House project.

[6] 265 Mich App 185; 693 NW2d 850 (2005).

committed clear error by misconstruing the balancing test. We subsequently granted plaintiff's application for leave to appeal.[7]

## II. Standard of Review

This Court reviews questions of statutory interpretation de novo.[8] To effectuate the intent of the Legislature, we interpret every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage.[9]

In addition, certain FOIA provisions require the trial court to balance competing interests.[10] In *Federated*, this Court announced the appropriate standard of review of discretionary determinations in FOIA cases. While discussing both factual findings and discretionary determinations, we stated in *Federated* that when an appellate court is called upon to evaluate the trial court's discretionary determinations, it must defer to the trial court's decision unless there

---

[7] 472 Mich 928 (2005). The parties were instructed to brief: (1) whether the Court of Appeals correctly applied the appropriate standard of review; (2) whether the Washtenaw Circuit Court clearly erred in applying the § 13(1)(m) FOIA exemption, MCL 15.243(1)(m), to the public record in question; and (3) whether purely factual materials, if any, contained within the public record were properly included within the scope of the exemption.

[8] *Federated, supra* at 101.

[9] *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

[10] For example, in addition to the weighted balancing test in the frank communication exemption, the Legislature codified FOIA balancing tests at MCL 15.243(1)(c), (k), (n), (s), and (y).

was clear error.[11]  Clear error exists only when the appellate court "is left with the definite and firm conviction that a mistake has been made."[12]

*Federated* inadvertently misstated the appropriate standard of review for discretionary determinations in FOIA cases.[13]  In Michigan, the clear error standard has historically been applied when reviewing a trial court's factual findings[14] whereas the abuse of discretion standard is applied when reviewing

---

[11] *Federated, supra* at 101.

[12] *Id.* at 107.

[13] We disagree with Justice Cavanagh's argument that the abuse of discretion standard is inappropriate because the plaintiff has not and cannot view the contents of the withheld document.  Although the plaintiff does not know the factual content of a requested document, such is the nature of litigation under the FOIA.  This asymmetry does not reveal a defect in the abuse of discretion standard of review.

Justice Cavanagh does not disagree that, under Michigan's traditional jurisprudence, discretionary determinations are reviewed for abuse of discretion, and he does not answer how, under the clear error standard, the plaintiff could better challenge facts of which it is unaware.  Consistent with our law, it is more appropriate for appellate courts to consider whether the trial court abused its discretion when it makes a discretionary determination in light of the constellation of known facts that form the "particular instance."  Both parties concede that the Doyle letter contains Doyle's written impressions about the University House project, and hence its legal status as a "frank communication," and that the audit released a flood of financial information also pertaining to the project.  It is the importance of the former in light of the latter that is disputed by the parties.  Resolving this dispute in the context of the statutory weighted balancing test requires the trial court to make a judgment call.  Therefore, we review that judgment call for an abuse of discretion.

[14] See, e.g., *Federated, supra* at 106; *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); MCR 2.613(C).

---

matters left to the trial court's discretion.[15]  We take this opportunity to refine our

position in *Federated*.  First, we continue to hold that legal determinations  are

reviewed under a de novo standard.  Second, we also hold that the clear error

standard of review is appropriate in FOIA cases where a party challenges the

underlying facts that support the trial court's decision.  In that case, the appellate

court must defer to the trial court's view of the facts unless the appellate court is

left with the definite and firm conviction that a mistake has been made by the trial

court.  Finally, when an appellate court reviews a decision committed to the trial

court's discretion, such as the balancing test at issue in this case, we hold that the

appellate court must review the discretionary determination for an abuse of

discretion and cannot disturb the trial court's decision unless it falls outside the

principled range of outcomes.[16]

---

[15] See, e.g., *Babcock, supra* at 265, 268-270; *People v Jendrzejewski*, 455 Mich 495, 500; 566 NW2d 530 (1997); *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

[16] Cf. *Babcock, supra* at 265 ("whether a factor *exists* [fact question] is reviewed for clear error . . . whether a reason is substantial and compelling [discretionary determination] is reviewed for abuse of discretion") (emphasis added).

### III. The FOIA and the Frank Communication Exemption

The Legislature codified the FOIA to facilitate disclosure to the public of public records held by public bodies.[17] However, by expressly codifying exemptions to the FOIA, the Legislature shielded some "affairs of government" from public view. The FOIA exemptions signal particular instances where the policy of offering the public full and complete information about government operations is overcome by a more significant policy interest favoring nondisclosure.[18] In many of these instances, the Legislature has made a policy determination that full disclosure of certain public records could prove harmful to the proper functioning of the public body. Indeed, in *Federated* we instructed that a circuit court "should remain cognizant of the special consideration that the Legislature has accorded an exemptible class of records."[19]

The frank communication exemption at issue in this case provides that a public body may exempt from disclosure as a public record

---

[17] MCL 15.231(2) ("It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.").

[18] See MCL 15.243.

[19] *Federated, supra* at 110.

[c]ommunications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. *This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure.*[20]

The frank communication exemption ultimately calls for the application of a weighted balancing test where the circuit court must weigh the public interest in disclosure versus the public interest in encouraging frank communication. Under the plain language of the provision, these competing interests are not equally situated, and the Legislature intended the balancing test to favor disclosure. The Legislature's requirement that the public interest in disclosure must be clearly outweighed demonstrates the importance it has attached to disclosing frank communications absent significant, countervailing reasons to withhold the document. Hence, the public record is not exempt under the frank communication exemption *unless* the public body demonstrates that the public interest in encouraging frank communication between officials and employees of public bodies *clearly outweighs* the public interest in disclosure.[21]

---

[20] MCL 15.243(1)(m) (emphasis added).

[21] Michigan is not alone in valuing and protecting frank communication. As aptly noted by the Court of Appeals majority, other state legislatures and the United States Congress have recognized that a public agency's sensitive, internal deliberations must be granted some level of protection from public disclosure to

(continued…)

In addition to the statutory language initially favoring disclosure of a frank communication, it is important to consider carefully other words and phrases in the statutory text. First, we must be cognizant of the competing interests at stake *in the particular instance*.[22] Rather than speak in platitudes and generalities, the parties and the courts must consider how the unique circumstances of the "particular instance" affect the public interest in disclosure versus the public interest in encouraging frank communication. Second, the Legislature decided that the public has an interest in *encouraging* frank communication so that public officials' *ongoing* and *future* willingness to communicate frankly in the course of reaching a final agency determination is an essential component in the balancing test. Therefore, when a court interprets the "particular instance" in the frank communication exemption, it must remember that there is a valid public interest that officials and employees of a public body aspire to communicate candidly when the public body considers an issue that is "preliminary to a final agency determination of policy or action."

_____
(…continued)
promote the quality of those deliberations and to ensure overall good governance by the public agency. See, e.g., 5 USC 552(b)(5); Cal Gov't Code 6254(a); Colo Rev Stat 24-72-204(2)(a)(XIII); Conn Gen Stat 1-210(b)(1); Hawaii Rev Stat 92F-13(3); Ind Code 5-14-3-4(b)(6); Ky Rev Stat Ann 61.878(1)(j); Wash Rev Code 42.17.310(1)(i); W Va Code 29B-1-4(a)(8); Wyo Stat Ann 16-4-203(b)(v).

[22] Cf. *Federated, supra* at 110, interpreting "in the particular instance" in a different FOIA context.

Before the trial court may apply the balancing test, the public body must demonstrate to the satisfaction of the trial court that the public record is a "frank communication."[23] Drawing from the statutory language, the Court of Appeals has held that the public body must establish two things.[24] First, the document must cover other than purely factual materials, and, second, the document must be preliminary to a final determination of policy or action. We agree with the Court of Appeals precedent, but we conclude that a third qualification is apparent in the statutory language: the document sought must also be a communication or note *of an advisory nature* within a public body or between public bodies.

Therefore, a document is a "frank communication" if the trial court finds that it (1) is a communication or note of an advisory nature made within a public body or between public bodies, (2) covers other than purely factual material, and (3) is preliminary to a final agency determination of policy or action. If, in the trial court's judgment, the document fails any one of these threshold qualifications, then the frank communication exemption simply does not apply. For example, if the document is composed entirely of purely factual materials, it is

---

[23] If the public body denies the requesting party access to a public record, and the requesting party commences an action in the trial court, "*the burden is on the public body to sustain its denial.*" MCL 15.240(4) (emphasis added).

[24] See *Herald Co, Inc v Ann Arbor Public Schools,* 224 Mich App 266, 274; 568 NW2d 411 (1997), citing *Milford v Gilb*, 148 Mich App 778, 782; 384 NW2d 786 (1985).

not a frank communication, and the public body must disclose the document to the requesting party unless it has asserted an alternate, valid basis for nondisclosure.

In this case, the circuit court concluded that the Doyle letter was a frank communication.[25] It found that defendant carried its burden of proving (1) that the Doyle letter was of an advisory nature and covered other than purely factual materials, (2) the communication was made between officials and employees of public bodies, and (3) the communication was preliminary to a final agency determination.

The circuit court then moved to the balancing test and concluded that the balance of interests favored nondisclosure. The court offered four reasons to support the balance it struck. Its third and fourth reasons specifically address the balance of interests favoring nondisclosure of the Doyle letter:

> (1) The letter contains substantially more opinion than fact, and the factual material is not easily severable from the overwhelming majority of the contents: Doyle's views concerning the President's involvement with the University House project.
>
> (2) The letter is preliminary to a final determination of policy or action. The communication was between officials of public bodies. The letter concerns Defendant's investigation and ultimate determination of what action, if any, would be taken regarding the University House controversy.

---

[25] Plaintiff concedes that the Doyle letter is a frank communication. It challenges only the application of the weighted balancing test.

(3) The public interest in encouraging frank communications within the public body or between public bodies clearly outweighs the public interest in disclosure. Plaintiff's specific need for the letter, apparently to "shed light on the reasons why a highly respected public official resigned in the wake of EMU being caught misleading the public as to the true cost of the President's house", or the public's general interest in disclosure, is outweighed by Defendant's interest in maintaining the quality of its deliberative and decision-making process.

(4) Defendant conducted an investigation and recently published a "voluminous and exhaustive report" concerning its findings regarding the University House project, a copy of which was furnished to Plaintiff.

The circuit court identified the two competing interests. On one hand, plaintiff had an interest in obtaining the letter to "shed light" on President Kirkpatrick's involvement in the University House project. On the other hand, defendant needed to preserve its "deliberative and decision-making process" to carry out an effective internal investigation. The circuit court found that defendant had published and distributed to plaintiff a "voluminous and exhaustive report" of financial data related to the controversy. Defendant hired Deloitte & Touche to audit the expenditures related to the University House project and disseminated this audit to plaintiffs about the time plaintiffs filed suit to obtain the Doyle letter. In the circuit court's judgment, the wave of data related to the University House project flowing from this independent report lessened plaintiff's interest in disclosure of the Doyle letter and tipped the balance in defendant's favor such that

14

the public interest in encouraging frank communication *clearly outweighed* the public interest in disclosure.

## IV. The Circuit Court Did Not Abuse Its Discretion

Reiterating what we said in *Federated*, we note that the *trial court* must determine whether defendant met its burden of proof that a public record is exempt. In this case, the circuit court found that defendant met its burden of showing that the public interest in encouraging frank communication clearly outweighed the interest of disclosure in "the particular instance." On appeal we are to evaluate that conclusion for an abuse of discretion to determine if that decision falls outside the principled range of outcomes.

Plaintiff claims that two "outcome determinative" facts tip the balance of interests decisively in favor of disclosure and should compel this Court to find the circuit court committed clear error. First, bringing to public light any criticism supposedly leveled by Doyle against President Fitzgerald in the letter would foster accountability and facilitate good government, which plaintiff contends is the core purpose of the FOIA. Second, Doyle wrote the letter in view of his impending departure, so in this "particular instance" defendant has a relatively weak interest in encouraging frank communication. According to plaintiff, because the balancing test is already tilted in favor of disclosure, it is inconceivable that the circuit court's decision to withhold the Doyle letter did not amount to error requiring reversal.

15

Reviewing the circuit court's decision for an abuse of discretion rather than clear error, we reject, first, plaintiff's blanket assertion that every frank communication that criticizes a public official must be disclosed to assure good governance and accountability and accomplish the "core purpose" of the FOIA. That a frank communication contains criticism of a public official or a public body, which is unremarkable considering that these are *frank* communications, certainly factors into the balancing test, but it cannot singularly serve to outweigh the public interest in nondisclosure. Were we to adopt such a rule, we would eviscerate the frank communication exemption. We doubt that officials within a public body would offer *candid*, *written* feedback, or that they would do so for very long, if that feedback would invariably find its way into the public sphere. If the frank communication exemption can never protect a candid communication, which almost assuredly contains unfiltered criticism of policies and people, then we will have rendered this FOIA exemption a nullity. We agree with the Court of Appeals majority that defendant "need[s] more than cold and dry data to do its job, it need[s] the unvarnished candid opinion of insiders to make policy judgments and, particularly, to conduct sensitive investigations of top administrators" and to conclude otherwise would "sound the death knell of this vital tool for board members to discharge their oversight roles for the benefit of the public."[26]

---

[26] *Herald Co,* 265 Mich App 202-203, 205.

16

As for plaintiff's second "outcome determinative" consideration, we are not persuaded that Doyle's retirement marginalized the public interest in encouraging frank communication within the public body. In plaintiff's view, Doyle's retirement diminished the public interest in nondisclosure because, with Doyle departing, *he* would suffer no employment-related retribution by disclosing his honest feedback. By emphasizing this fact, plaintiff erroneously conflates the interests of the disclosing person, *one member* of the public body, with the public body's need, as an *institution*, to encourage frank communication in this "particular instance."

Quite simply, Doyle's resignation does not negate defendant's need to investigate thoroughly this controversy and future controversies. That one out-going member of defendant's administration might not be inhibited by the possibility of disclosure does not allay the concern that every other member of defendant's administration may harbor if Doyle's communications, and possibly theirs, are disclosed for public consumption. This Court has recognized, in a related FOIA context, that internal investigations are perilous precisely because employees are frequently afraid to make candid disclosures:

> "1. Internal investigations are inherently difficult because employees are reluctant to give statements about the actions of fellow employees.

> "2. If their statements would be a matter of public knowledge they might refuse to give any statements at all or be less than totally forthcoming and candid.

17

"3. Also, disclosure could be detrimental to some employees.

"4. Public disclosure of records relating to internal investigations into possible employee misconduct would destroy or severely diminish the Sheriff Department's ability to effectively conduct such investigations."[27]

Defendant was investigating the possible misconduct of the most senior member of management, President Kirkpatrick, and, in doing so, sought Doyle's candid observations regarding the matter. Disclosure of Doyle's letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public. This would create a chilling effect that would surely dry up future frank communications. Thus, the departure of Doyle has very little bearing on the institutional interests protected by the frank communication exemption.

Plaintiff would transform the weighted balancing test of the frank communication exemption into an irrebuttable presumption of disclosure. We decline to adopt plaintiff's position. The plain language of the balancing test requires the public interest in encouraging frank communication to *clearly outweigh* the public interest in disclosure, but it does not tacitly create an insurmountable obstacle to the public body's seeking to withhold a frank

---

[27] *Kent Co Deputy Sheriffs Ass'n v Kent Co Sheriff*, 463 Mich 353, 365-366; 616 NW2d 677 (2000) (citation omitted).

communication from disclosure. The circuit court in this case acknowledged that the frank communication exemption required a weighted balancing test. Therefore, we cannot conclude that it misapprehended the weighted balancing test when it exempted the Doyle letter from disclosure.

We do not minimize the general public interest in the disclosure of frank communications. The Legislature explicitly codified within the frank communication exemption its policy determination that a frank communication must be disclosed to the public *unless* the public interest in disclosure is *clearly outweighed*. Moreover, the public has a keen interest in receiving information regarding the alleged misuse of public funds, which, if such misuse were true, might undermine the public's trust and confidence in the public body. If public resources are squandered under their watch, then it calls into question whether members of the public body are fit to discharge the responsibilities that have been committed to them on behalf of the general public.

However, we do not hypothesize generally whether the public interest in disclosure should prevail over the public interest in nondisclosure. We only consider the balance struck by the circuit court in the context of this "particular instance." The circuit court reviewed the evidence and made appropriate findings of fact pertaining to the Doyle letter. It found that defendant had released a "voluminous and exhaustive report" that tipped the balance in favor of nondisclosure because the Deloitte audit disclosed for the public record pertinent

19

financial data related to the University House project. Without question, the circuit court's decision is controversial. But a circuit court is permitted to reach a controversial conclusion with which reasonable people and reasonable appellate courts may disagree without abusing its discretion and reaching a result outside the principled range of outcomes. Members of this Court, members of the Court of Appeals, or another circuit judge might have resolved this balance of interests differently, but the circuit court did not abuse its discretion.

## V. Separation of Exempt and Nonexempt Material

For the foregoing reasons, we affirm the circuit court's conclusion that the Doyle letter is exempt as a frank communication. However, pursuant to MCL 15.244, we hold that the exempt and nonexempt material within the Doyle letter must be separated and the latter disclosed to plaintiff.

The FOIA requires that

> [i]f a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.[28]

The public body is assigned the responsibility, "to the extent practicable, [to] facilitate a separation of exempt from nonexempt information."[29] This provision

---

[28] MCL 15.244(1).

[29] MCL 15.244(2).

20

applies without exception to every public record. Accordingly, we remand this matter to the circuit court with the direction that it separate the opinion from the purely factual material and disclose the latter to plaintiff.

## VI. Conclusion

The circuit court did not abuse its discretion by determining that the public interest in frank communication clearly outweighed the public interest in disclosure. In this "particular instance," defendant had a strong interest in preserving candid internal investigatory communications. Although Doyle may have retired soon after writing the letter, defendant maintained its interest in preventing a ripple effect of chilled communications during this or subsequent investigations. The public interest in disclosure is favored initially in the weighted balancing test. However, the circuit court found that defendant's release of financial data mitigated that interest. As such, we cannot conclude that the circuit court abused its discretion. Accordingly, we affirm the grant of summary disposition in favor of defendant and remand this matter to the circuit court to separate the exempt and nonexempt information in the Doyle letter, to the extent practicable, and make the nonexempt material available to plaintiff.

Robert P. Young
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

21

STATE OF MICHIGAN

SUPREME COURT

HERALD COMPANY, INC, d/b/a
BOOTH NEWSPAPERS, INC and
ANN ARBOR NEWS,

     Plaintiff-Appellant,

v                                                                    No. 128263

EASTERN MICHIGAN UNIVERSITY
BOARD OF REGENTS,

     Defendant-Appellee.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

     I concur with part II of the majority's opinion, correcting the standard of review in Freedom of Information Act[1] cases. In all other respects I join in the analysis and conclusion of Justice Cavanagh's dissent, signing all but part II of that dissent.

                               Elizabeth A. Weaver

---

[1] MCL 15.231 *et seq.*

STATE OF MICHIGAN

SUPREME COURT

HERALD COMPANY, INC, doing business
as BOOTH NEWSPAPERS, INC., and ANN
ARBOR NEWS,

       Plaintiff-Appellant,

V                            No.  128263

EASTERN MICHIGAN UNIVERSITY
BOARD OF REGENTS,

       Defendant-Appellee.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree with and sign all but part II of Justice Cavanagh's dissenting opinion.  Defendant did not carry its burden of proving that the letter was exempt. The statutory language supports no other decision.  Therefore, the trial court abused its discretion.  I would reverse the judgment of the Court of Appeals and remand the case to the circuit court for release of the letter and an award of attorney fees.

I concur with the majority's clarification of the standard of review in Freedom of Information Act[1] cases and agree that discretionary decisions in them should be reviewed for an abuse of discretion.

                            Marilyn Kelly

---

[1] MCL 15.231  *et seq.*

STATE OF MICHIGAN

SUPREME COURT

HERALD COMPANY, INC, d/b/a
BOOTH NEWSPAPERS, INC and
ANN ARBOR NEWS,

     Plaintiff-Appellant,

v                                        No. 128263

EASTERN MICHIGAN UNIVERSITY
BOARD OF REGENTS,

     Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

     Today's majority decision is an example of a court properly articulating the law, yet failing to apply it correctly. Because I strongly disagree with the majority's position that the trial court did not abuse its discretion when it held that defendant Eastern Michigan University Board of Regents met its burden under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., I must respectfully dissent.

## I. FACTS AND PROCEEDINGS

     Plaintiff Herald Company, Inc., doing business as Booth Newspapers, Inc., and Ann Arbor News, sought disclosure of a number of public records related to

the building of the Eastern Michigan University president's new house.[1]  One of the records requested was a letter written by Eastern Michigan University's vice president of finance, Patrick Doyle.  Doyle wrote the letter at the request of an Eastern Michigan University regent to offer insight about expenditures associated with the president's residence.  Defendant granted in part plaintiff's request for documents, but it declined to produce the Doyle letter, citing MCL 15.243(1)(m).  Plaintiff filed a complaint under the FOIA, and the trial court granted summary disposition to defendant, finding that the letter was exempt from disclosure under the "frank communication" exemption of the FOIA, MCL 15.243(1)(m).  The trial court listed four reasons why it believed that the letter was exempt.

> (1) The letter contains substantially more opinion than fact, and the factual material is not easily severable from the overwhelming majority of the contents:  Doyle's views concerning the President's involvement with the University House project.

> (2) The letter is preliminary to a final determination of policy or action.  The communication was between officials of public bodies.  The letter concerns Defendant's investigation and ultimate determination of what action, if any, would be taken regarding the University House controversy.

> (3) The public interest in encouraging frank communications within the public body or between public bodies clearly outweighs the public interest in disclosure.  Plaintiff's specific need for the letter, apparently to "shed light on the reasons why a highly respected public official resigned in the wake of EMU being caught misleading the public as to the true cost of the President's house", or the public's general interest in disclosure, is outweighed by Defendant's interest in maintaining the quality of its deliberative and decision-making process.

---

[1] The president at the time, Samuel Kirkpatrick, has since resigned.

(4) Defendant conducted an investigation and recently published a "voluminous and exhaustive report" concerning its findings regarding the University House project, a copy of which was furnished to Plaintiff.

The Court of Appeals affirmed in a split decision. 265 Mich App 185; 693 NW2d 850 (2005). This Court granted plaintiff's application for leave to appeal. 472 Mich 928 (2005).

## II. STANDARDS OF REVIEW

Summary disposition was granted to defendant on the basis of the FOIA. This Court reviews the grant or denial of summary disposition de novo. *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). Similarly, the proper interpretation of a statutory provision is a question of law that this Court reviews de novo. *Id.* Application of FOIA exemptions involving legal determinations are also reviewed under a de novo standard of review. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 106; 649 NW2d 383 (2002). Exemptions involving discretionary determinations, such as an exemption requiring a court to engage in a balancing of public interests, are reviewed under the clearly erroneous standard of review. *Id*. at 107.

"A finding is 'clearly erroneous' if, after reviewing the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. (citation omitted). As stated by the United States Supreme Court, this is the foremost of the general principles governing the clearly erroneous standard. *Anderson v City of Bessemer City*, 470 US 564, 573; 105 S Ct 1504; 84

3

L Ed 2d 518 (1985).  The Supreme Court further explained that as long as a trial court's "account of the evidence is plausible in light of the record *viewed in its entirety*, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. at 574 (emphasis added).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. This standard, however, does not suggest that the mere fact that a court has viewed the evidence in a particular manner necessarily amounts to a permissible view of the evidence.  Rather, "[d]ocuments or objective evidence may contradict [a] witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id*. at 575.  Where such factors are present, a court may indeed find clear error.  The majority claims that the clear error standard of review was "inadvertently misstated" in *Federated Publications*, *supra*, but I fail to see how this is so.  The *Federated Publications* majority opinion was written by Justice Markman and signed by six members of this Court, including all justices in the majority in this case.  The standard of review was not just mindlessly inserted into *Federated Publications*; a discussion of the standard of review spanned *three pages*.

Yet even more important is that the standard of review as articulated in *Federated Publications* is correct.  The majority now states "that the clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court's decision." *Ante* at 8.  "However,

4

where the parties do not dispute the underlying facts but rather challenge the trial court's exercise of discretion," the proper standard of review is abuse of discretion. *Id*. at 2-3. In this case, the majority asserts that the parties do not dispute the underlying facts, they only dispute the import of those facts as they factor into the weighted balancing test of the frank communication exemption. *Ante* at 3. Therefore, the majority asserts the proper standard of review is abuse of discretion.

But the majority ignores the obvious reason why clear error is the proper standard of review when a court is analyzing FOIA *exemptions* requiring a determination of a discretionary nature. Simply, the party challenging the exemption *has never seen the document* being sought.[2] It will often be impossible for a party seeking a document to dispute the underlying facts when those facts are only to be found in the document that the party cannot see. Plainly put, plaintiff needs to see the document to challenge underlying facts, but plaintiff cannot see the document because defendant is claiming it is exempt. The majority now holds that because plaintiff has not challenged the underlying facts, a higher standard of review applies. Not only does this nonsensical argument ignore the reality of

---

[2] As plaintiff stated, "Indeed, at oral argument the only person in the courtroom who will *not* have seen the Doyle letter will be undersigned counsel, who must rely upon the public Opinions of the reviewing courts to know anything about what is in the letter." (Reply Brief of Plaintiff-Appellant, p 4.)

proceedings dealing with FOIA exemptions, it also ignores the reality in this case because plaintiff *did* challenge an underlying fact.

Plaintiff challenges the claim that the letter is not relevant in light of the "exhaustive" public report defendant issued. Plaintiff argues that all the facts in the Doyle letter are not contained in the public report, contrary to the trial court's opinion.[3] But, of course, plaintiff is limited in its arguments by the fact that *plaintiff has never seen the letter.* Further, plaintiff cannot further challenge any other underlying facts because defendant has offered no evidence to support its position. Defendant's position, reiterated by the trial court, is based on nothing more than generalized assumptions about what is in the public's interest. Because defendant never came forward with any factual evidence to support its position, there were no other *facts* for plaintiff to challenge. In essence, defendant has not met its burden under the statute, yet plaintiff is being penalized with a more deferential standard of review for defendant's failing. However, even using the abuse of discretion standard adopted by the majority to evaluate this case, the trial court still abused its discretion because the trial court's decision was certainly not a reasonable and principled outcome when defendant presented no evidence to support its position, contrary to the clear language of the statute.

---

[3] This argument is supported by Chief Judge Whitbeck's thorough dissent in the Court of Appeals. *Herald*, *supra* at 222.

## III. ANALYSIS

This case involves an issue of statutory interpretation. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). The first step is to review the language of the statute. *Id.* If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible. *Id.*

The FOIA starts from a basic premise—the disclosure of public documents is the cornerstone of responsible government. The FOIA provides, "It is the public policy of this state that all persons . . . are entitled to *full and complete information regarding the affairs of government* and the official acts of those who represent them as public officials and public employees, consistent with this act." MCL 15.231(2) (emphasis added). The FOIA also recognizes that the public has a strong interest in ensuring that it receives information to make sure that those individuals in government who are entrusted with the operation of public institutions do so in a responsible manner. To this end, the FOIA provides, "The people shall be informed so that they may fully participate in the democratic process." *Id.* This Court has consistently held that the FOIA is intended primarily as a prodisclosure statute. *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991); see also *State Employees Ass'n v Dep't of Mgt & Budget*, 428 Mich 104, 109; 404 NW2d 606 (1987); *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 231-232; 507 NW2d 422 (1993).

7

Accordingly, under the FOIA, unless expressly exempt, a public body must disclose a public record if provided with a written request that sufficiently describes the record. MCL 15.233(1). A person has a right to inspect, copy, or receive a copy of the requested record. *Id*. If a public body denies access to a public record, the public body has the burden to prove that its denial comports with the law. MCL 15.240(4).

In this case, defendant is the governing body of a Michigan public university and is a public body as defined by the FOIA. See MCL 15.232(d). Plaintiff provided defendant with a specific written request for the Doyle letter, and defendant denied this request claiming that the letter was exempt under MCL 15.243(1)(m) as a "frank communication."

MCL 15.243(1)(m) states, in relevant part, that a public body may exempt from disclosure the following:

> Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that *in the particular instanc*e the public interest in encouraging frank communication between officials and employees of public bodies *clearly outweighs* the public interest in disclosure. [Emphasis added.]

In assessing whether a public record can be withheld under the "frank communication" exemption, a court must determine whether a public body has met its burden of showing that the requested public record is of an advisory nature and contains other than purely factual materials that are preliminary to a final

8

agency determination of policy or action. If so, the court must next determine whether "*in the particular instance*," the public interest in encouraging frank communication between officials and employees of public bodies "*clearly outweighs*" the public interest in disclosing the record.

If a court determines that the document should not be disclosed because the public body has met its burden of showing that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure, see MCL 15.243(1)(m), then the court must next determine if fact can be separated from opinion in the document. If so, then the document must be redacted and factual information disclosed. MCL 15.244.[4]

---

[4] MCL 15.244 provides the following:

(1) If a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

(2) When designing a public record, a public body shall, to the extent practicable, facilitate a separation of exempt from nonexempt information. If the separation is readily apparent to a person requesting to inspect or receive copies of the form, the public body shall generally describe the material exempted unless that description would reveal the contents of the exempt information and thus defeat the purpose of the exemption.

The Legislature has plainly set forth that the provision is weighted toward disclosure. Indeed, the "frank communication" exemption states that the exemption *does not apply* unless the public body shows that the public interest in not disclosing the record *clearly outweighs* disclosure in the particular instance. Notably, the "frank communication" exemption is the only FOIA provision that uses the term "clearly outweighs." Other provisions merely use the term "outweighs" when providing for a balancing test. See, e.g., MCL 15.243(1)(c), (k), (n), (s), and (y).

In this case, the letter at issue is a communication of an advisory nature within a public body. It covers materials other than purely factual materials because it contains facts and the vice president's opinions, and the letter, when written, was preliminary to a final agency determination about the house controversy. The trial court used this set of facts as one of its reasons to support the decision to grant summary disposition to defendant. The trial court stated that nondisclosure was favored because the letter was preliminary to a final determination of policy or action, the communication was between officials of public bodies, and the letter concerned defendant's investigation and ultimate determination of what action, if any, would be taken regarding the university housing controversy. However, this "finding" does not favor disclosure or nondisclosure. It is merely a recitation of the circumstances that must initially be met for a document to fall within the "frank communication" exemption. Even when all the above circumstances are met, the public body must still show that in

10

that particular instance, the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure. See MCL 15.243(1)(m).

Not only does the majority neglect the fact that defendant has offered *nothing* but mere platitudes to support its position, it uses these platitudes in an attempt to bolster its analysis. The majority states, "Disclosure of Doyle's letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public. This would create a chilling effect that would surely dry up future frank communications." *Ante* at 18. Yet defendant offered no evidence that this was or would be the case. There is no evidence of any chilling effect or any future chilling effect. There is certainly no evidence of any fear among university officials. The majority assumes that people will not speak candidly if their opinions will be made public, but such a blanket assertion is not relevant under the statute as it was written by our Legislature. While the majority may believe that secrecy is critical to good government, this belief has no bearing when interpreting the language selected by the Legislature.

Based on the *facts* of the case, defendant has not met its burden to prove that the public interest in nondisclosure to encourage frank communication in this particular instance clearly outweighs the public interest in disclosure, and the trial

11

court abused its discretion when it held otherwise.[5] Defendant merely offers general arguments about how a public body needs candid input to maintain the quality of its decision-making process. However, defendant has offered no convincing argument about why in this "*particular instance*" the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure. Rather, defendant has presented generic arguments that could be applicable to almost *any* case, and the trial court and the majority have accepted these generalizations without question. But the Legislature did not seek to create a blanket exemption for frank communications. The Legislature only created an exemption when the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure in "*the particular instance*" at issue.

This Court examined the phrase "in the particular instance" as it relates to the FOIA law enforcement exemption, MCL 15.243(1)(s), and a request for records relating to various subjects in *Federated Publications*, *supra* at 110. We stated that the word "particular" means "'pertaining to a single or specific person, thing, group . . . not general,'" and "instance" "means 'a case or occurrence of something.'" *Id*., quoting *Random House Webster's College Dictionary* (2001).

_____

[5] I note that plaintiff also argued that defendant did not meets its burden under the statute *based on the facts of the case*. I disagree with the majority that plaintiff advocated a "blanket exemption" for every frank communication that contains criticism of a public official or public body.

We noted that "a FOIA request may be general and entail a request for records relating to varied subjects, arguably implicating several different aspects of the public interest." *Id*. at 111. When a request is made for records relating to varied subjects, a "court may be required to conduct a 'particular instance' categorization of records to enable it to identify and weigh similar aspects of the public interest in favor of disclosure or nondisclosure." *Id*. However, "[i]n some cases, it may be clear that the FOIA request is comprised of a sufficiently precise or narrow category of records that the circuit court can adequately balance the public interests at stake without the need of further 'particular instance' categorization." *Id*. at 110.

In this case, the request was not for records related to varied subjects, but for documents related to the vice president's resignation and expenditures for the president's home. This request was sufficiently narrow so the court could adequately balance the public interests at stake without further categorization.[6]

---

[6] The September 10, 2003, request was for the following:

1. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, to and from the following parties since Jan. 1, 2002, regarding the new University House on campus:

● Vice President for Business and Finance Patrick Doyle or other staff members of the Office of Business and Finance.

● The EMU Board of Regents.

● EMU President Samuel Kirkpatrick.

(continued…)

13

However, the general discussion in *Federated Publications* is still helpful. The meaning of "the particular instance" in both the law enforcement exemption and the "frank communication" exemption requires an examination of the arguments relating to the specific case at hand. The "frank communication" exemption requires a public body to make *specific* arguments about the public interest in the particular instance at issue. It is not sufficient for a public body to simply make general statements about what is in the public interest.

The majority's acceptance of the generalized arguments proffered by defendant results in the "frank communication" exemption being effectively eliminated. See, e.g., *Evening News Ass'n v City of Troy*, 417 Mich 481, 492; 339 NW2d 421 (1983) ("We hold that a 'generic determination' does not satisfy the FOIA."). It should go without saying that in many, if not most, cases, a public body may prefer that public records that express criticism or cast the public body in a negative light be withheld to avoid embarrassment. However, the purpose of the FOIA is not to provide a shield to public bodies. The purpose of the FOIA is to ensure that our citizens fully participate in the democratic process. MCL

_____
(…continued)

2. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, between Vice President for Business and Finance Patrick Doyle to and from the EMU Board of Regents, EMU President Samuel Kirkpatrick and/or the Office of Human Resources, regarding Doyle's recent resignation and-or retirement.

14

15.231(2). Knowledge, not secrecy, is fundamental to ensuring that this purpose is fulfilled.

In this case, defendant is a public body, and there was much criticism and concern about the high cost of the president's new residence. The public's interest in who approved the costs associated with the house and how expenditures were authorized is certainly an important matter. It is not merely a matter of "morbid public curiosity," as expressed by one amicus curiae. The letter at issue was written by the vice president of *finance* at the university. The letter provides information about how expenditures were authorized and reviewed, as well as the president's level of involvement in the expenditures. The vice president's insights are undoubtedly relevant to the possible misuse of tuition, fundraising, and taxpayer dollars. The public has an interest in learning if those who have been charged with administering a public university are doing so properly and responsibly.

The fact that defendant had released a report on the matter was not a sufficient reason to find that the public interest favored nondisclosure, contrary to the trial court's holding. Defendant's investigation and release of a report does not lessen the public interest in disclosing a letter written by the *vice president of finance*. As the vice president of finance, Doyle was in a unique position to comment on how funds were spent, who was involved, and what exactly happened. The fact that defendant may have fulfilled its role by investigating and reporting on the matter does not lessen the public's interest in learning what

15

occurred *before* the matter was investigated and reported. In other words, the public has a genuine interest in learning *how* the misuse happened in the first place and if the misuse was the result of faulty procedures or oversight. The vice president is particularly qualified to discuss the situation and the concerns about the expenditures that go to the core of governmental accountability. This is not a private matter, but a *public* one.

As it specifically relates to Vice President Doyle, he had already decided to retire when the letter was written, and defendant has presented no specific evidence explaining how keeping the letter undisclosed would encourage further communications. Notably, Doyle's letter has a section labeled in bold "Why did I decide to retire?" The vice president then goes on to detail in the letter itself the reasons why he decided to retire. Contrary to the majority's assertion, this fact is critical in examining whether the public interest in nondisclosure clearly outweighs the public interest in disclosure in *this particular instance*. In this particular instance, defendant has not provided specific evidence that disclosure of the letter would inhibit frank communication. The letter writer had decided to retire, and there is certainly no evidence that disclosing the letter would inhibit any future frank communications from him. Notably, there is also no evidence that disclosing the letter would inhibit *anyone* from offering additional insight. There is no indication that *any employee* was reluctant to share information because of a fear of retribution.

16

The majority has stated that Doyle's retirement "does not allay the concern that every other member of defendant's administration may harbor if Doyle's communications, and possibly theirs, are disclosed for public consumption." *Ante* at 17. But defendant has not offered *one instance* where an employee expressed any concern about providing information or an opinion that would prohibit defendant from engaging in any type of decision-making process. Defendant has offered not one example of encountering any type of hindrance in investigating this matter—or any matter—because a person was afraid their communication would be made public. The majority is expressing a general concern that is not grounded in the facts of this case. The statute uses the phrase "in the particular instance," yet the majority ignores that there has been *no evidence* offered of any hint of fear or hesitation in this particular instance.

Notably, there is also no indication that defendant was continuing its investigation and would need to seek additional information from other employees. In fact, in an attempt to show that the release of the letter is unnecessary, defendant argues that it released an "exhaustive" report on its findings. However, the release of this report indicates that defendant's investigation into the housing matter was complete.

In an attempt to support its flawed analysis, the majority offers only generalizations. The majority states, "We doubt that officials within a public body would offer *candid*, *written* feedback, or that they would do so for very long, if that feedback would invariably find its way into the public sphere." *Ante* at 16

17

(emphasis in original).  The majority further asserts, "Disclosure of Doyle's letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public.  This would create a chilling effect that would surely dry up future frank communications."  *Ante* at 18.  But the majority's general concerns are not grounded in any facts presented by defendant, and they are certainly not grounded in the statutory language.  Defendant has offered no specific evidence that releasing the letter would have a chilling effect on *an investigation that was essentially over* nor has defendant presented any evidence of a chilling effect on future investigations.  The majority's incredible statement that they "do not hypothesize generally," *ante* at 19, about the public interests is false.  All that the majority relies on—as the trial court did as well—are *generalizations* about the public interest.  Accordingly, the trial court's finding that defendant's interest in maintaining the quality of its deliberative and decision-making process outweighed the public interest in disclosure was an abuse of discretion because defendant offered only general arguments and no specific evidence explaining *why* disclosing the letter would inhibit its decision-making process.  The trial court's decision is not a reasonable and principled outcome because there is *no* evidence to support such a decision.

Vague and rote arguments about the chilling effect of disclosing the letter are insufficient to satisfy the Legislature's clear mandate that a public body offer evidence pertinent to the *particular instance* at issue.  See, e.g., *Evening News*

18

*Ass'n*, *supra* at 501-503, 506-507 (Generic claims that revealing names would have a chilling effect on the investigation in that matter were entirely conclusory because no reasons were given.). The majority's decision grants public bodies almost complete control over determining what is and what is not in the public interest. Abdicating this control to a public body is not consistent with the FOIA, which was enacted to ensure disclosure to prevent abuses in the operation of government. See *Swickard*, *supra* at 543. The Legislature has mandated that our courts require more from our public bodies than merely deferring to broad arguments that are not grounded in fact. Mere platitudes are insufficient to meet the statutory requirements.

Because defendant has not met its burden to prove that, in this particular instance, the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure, I believe the entire requested document must be disclosed. Therefore, while fact can be separated from opinion in the letter, it is unnecessary to do so because I believe the whole letter must be released.[7]

---

[7] It is not relevant whether the letter contains more opinion than fact, as the trial court stated. The statute applies to communications and notes that cover "other than purely factual materials . . . ." MCL 12.243(1)(m). The letter in this case covers other than purely factual material because it contains both fact and the vice president's opinions; therefore, it is analyzed under the "frank communication" exemption. The statute does not provide different standards based on how much opinion is in the document as opposed to how much factual material is in the document. The statute merely refers to documents that "cover other than purely factual materials," which this document does. Therefore, the
(continued…)

## IV. CONCLUSION

Our citizens' full participation in the democratic process requires openness and accountability. Today, the majority has ignored the language of the statute and embraced generalizations that are not supported in any manner by the evidence presented by defendant. The impact of such a decision is to effectively abolish the "frank communication" exemption that was crafted by our Legislature. Because I believe that defendant has not met its burden of showing that the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure in this particular instance, I would reverse the judgment of the Court of Appeals and remand the matter to the circuit court for an expedited proceeding under MCL 15.240(5) to release the letter and award reasonable attorney fees, costs, and disbursements to plaintiff, in accord with MCL 15.240(6). I believe that the statutory language and lack of evidence presented by defendant support no other decision.

Michael F. Cavanagh<br>
Elizabeth A. Weaver<br>
Marilyn Kelly

---

(…continued)

trial court abused its discretion in using the fact that there was more opinion than fact in the letter as a basis to deny disclosure because the statute applies to all documents that contain "other than purely factual materials" and provides for no further categorization.

20